UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COLLEEN M. STRAPPONI and MARC STRAPPONI,<br><br>*Plaintiffs*,<br><br>v.<br><br>TOWN OF BLACKSTONE; THE BOARD OF SELECTMENT FOR THE TOWN OF BACKSTONE; RYAN CHAMBERLAND, individually and in his official capacity as Chairmen of the Select Board; ROSS ATSTUPENAS, individually and in his official capacity as Interim Town Administrator; TANYA POLAK, individually and in her official capacity as Clerk of the Select Board; MARY BULSO, individually and in her official capacity as Member of the Select Board; DORI VECCHIO, individually and in her official capacity as Town Administrator; BRIAN SCANLON, individually and in his official capacity as Member of the Select Board; and LAUREN TAYLOR, individually and in her official capacity as Town Accountant and Assistant Town Administrator,<br><br>*Defendants*. | Civil Action No. 25-cv-40013-MRG |

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS (ECF Nos. 7, 10, 13)

**GUZMAN, J.**

Plaintiffs Colleen M. Strapponi and Mark Strapponi (collectively, "Plaintiffs") bring this action against the Town of Blackstone (the "Town"); the Board of Selectmen for the Town of Blackstone ("Select Board") (collectively, the "Municipal Defendants"); and a number of public officials (collectively, the "Individual Defendants"), including Ryan Chamberland, individually and in his official capacity as Chairman of the Select Board; Ross Atstupenas, individually and in

his official capacity as Interim Town Administrator; Tanya Polak, individually and in her official capacity as Clerk of the Select Board; Mary Bulso, individually and in her official capacity as Member of the Select Board; Dori Vecchio, individually and in her official capacity as Town Administrator; Brian Scanlon, individually and in his capacity as Member of the Select Board; and Lauren Taylor, individually and in her official capacity as Town Accountant and Assistant Town Administrator (collectively, "Defendants"). Plaintiffs assert thirteen counts, including two federal claims: Count X alleging violation of civil rights pursuant to 42 U.S.C. § 1983 and Count XI alleging violation of the Family and Medical Leave Act. Defendants have moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). [ECF Nos. 7, 10, 13]. For the reasons that follow, the motions are **GRANTED**.

I.     BACKGROUND

Plaintiff Colleen Strapponi began working for the Town of Blackstone in June 1995. [ECF No. 1-1 ("Compl.") ¶ 16]. Although Blackstone never gave Mrs. Strapponi a job description, she variously served as a Blackstone Municipal Secretary, Recycling Coordinator, Health Agent, and Code Enforcement Officer/Zoning Agent. [Compl. ¶ 17]. During her tenure as a Blackstone employee and prior to 2021, Mrs. Strapponi had working relationships with seven different Town Administrators and was never the subject of any documented grievance, reprimand, disciplinary action, or warning concerning her employment. [Compl. ¶¶ 18-21]. Mrs. Strapponi's personnel file contains no complaints concerning her employment. [Compl. ¶ 22].

Mrs. Strapponi served as a long-serving municipal employee. [Compl. ¶ 536]. By 2021, Mrs. Strapponi had worked for the Town in positions that included benefits like income, health benefits, vacation time, leave policies, and pension. [Compl. ¶ 535]. While serving as Code Enforcement Officer/Zoning Agent, Mrs. Strapponi worked with numerous departments, boards,

and commissions, including but not limited to Inspectional Services, Fire Department, Police Department, Board of Health, Conservation Commission, Planning Board, and Zoning Board of Appeals. [Compl. ¶ 23]. She was involved in reviewing licenses, confirming insurance, overseeing zoning compliance with Town Bylaws and Commonwealth regulations, assisting with building plan reviews, approving express permits, and confirming information needed on plans. [Compl. ¶ 24]. Mrs. Strapponi went over each application for compliance with the Building Commissioner before the permit was approved by the Building Commissioner. [Compl. ¶ 25]. Mrs. Strapponi was also involved in running the Town's COVID response, holding more than 52 COVID vaccination clinics, overseeing the Town's contact tracing and COVID-positive reporting, and posting and updating emergency and public health orders, advisories and notices. [Compl. ¶ 26]. During the COVID pandemic, Mrs. Strapponi was on-call as the Health Agent 24 hours a day, 7 days a week. [Compl. ¶ 27].

On November 15, 2022, Town Administrator Dori Vecchio gave Mrs. Strapponi a letter placing her on administrative leave and stating that a hearing would be held the next day, on November 16, 2022, at 3:00 P.M. [Compl. ¶ 544]. The letter identified Town Bylaw § 145-53(D) as the basis for Mrs. Strapponi being placed on "administrative leave." [Compl. ¶ 545]. The November 15, 2022 letter identified the following alleged bases for potential termination: (a) "attempting to arrange a $10,000 quid pro quo salary kick-back with the building commissioner;" (b) "acting in an unprofessional manner on October 5, 2022 during a meeting when we discussed a new building commissioner [];" (c) "failure to manage the recycling center;" (d) "failure to inspect the Kimball Sand earth removal project;" (e) unnamed "employees" and Town "residents" "complained [] about your bullying and unprofessional behavior;" (f) telling Scott Estey "that I was going to make him do an unreasonable amount of custodial work;" and (g) "warning [Rick

Heim] to be careful of me (Ms. Vecchio) because I watch what everyone does on the cameras in my office, calling me 'Oz and a camera nazi.'" [Compl. ¶ 546]. Ms. Vecchio, Town Counsel Chris Brown, and Police Chief Gregory Gilmore then escorted Mrs. Strapponi out of the Town Hall. [Compl. ¶ 547].

Because Mrs. Strapponi was given less than 24 hours to prepare for the hearing, her counsel requested that the hearing be postponed by 6 days to November 22, 2022. [Compl. ¶ 548]. The hearing was held before the Select Board on December 1, 2022. [Compl. ¶ 550]. On December 1, 2022, Mrs. Strapponi was terminated from her positions as Recycling Center Coordinator, Code Enforcement Officer/Zoning Agent, and Health Agent. [Compl. ¶ 32]. Mrs. Strapponi was not returned to her positions as Recycling Center Coordinator or Code Enforcement Officer/Zoning Agent. [Compl. ¶ 495]. She returned in her role as Blackstone's Health Agent in July 2023. [Compl. ¶ 278].

In Summer 2022, Mrs. Strapponi's health care providers advised her to take a leave of absence due to health issues related to the work environment and treatment by Town officials and employees. [Compl. ¶ 613]. Mrs. Strapponi chose to continue working because another municipal secretary was experiencing health issues due to treatment by Town officials and employees. [Compl. ¶ 614]. Mrs. Strapponi did not want to leave the other secretary alone to deal with the Town. [Compl. ¶ 615]. Mrs. Strapponi knew that the municipal secretary would be leaving in September and voluntarily chose to postpone her leave of absence. [Compl. ¶ 616]. On or about November 15, 2022, Mrs. Strapponi sent a letter to Ms. Vecchio requesting a leave of absence pursuant to the Family and Medical Leave Act as set forth in Section 145-30 of the Town's Bylaws. [Compl. ¶ 617]. Mrs. Strapponi's Attorney also sent a letter to Ms. Vecchio regarding Mrs. Strapponi's FMLA request and requesting that any hearing on Mrs. Strapponi's potential

4

termination be postponed until Mrs. Strapponi was able to return from her medical leave as determined by her health care provider. [Compl. ¶ 618]. Mrs. Strapponi's physician provided written documentation stating that Mrs. Strapponi was suffering from a serious health condition and should not return to work or be required to make any decisions regarding her employment with the Town until further notice. [Compl. ¶ 619]. Mrs. Strapponi had worked for the Town for over 27 years at the time of her FMLA request. [Compl. ¶ 611]. The Town has the number of employees required for FMLA coverage. [Compl. ¶ 612]. Mrs. Strapponi alleges she suffered damages including loss of longevity benefits and lost wages. [Compl. ¶¶ 328-333].

## II.  LEGAL STANDARDS

A complaint "must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Cardigan Mountain Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)). But under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss an action arguing that it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555 (citations omitted). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (quoting Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005)).

On a motion to dismiss made pursuant to Rule 12(b)(6), the factual allegations in the complaint are accepted as true, and the Court draws "all reasonable inferences in favor of the plaintiff." Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008) (citing Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, F.S.B., 958 F.2d 15, 17 (1st Cir. 1992)).

### III.   DISCUSSION

#### A.   Federal Claims

Plaintiffs assert claims pursuant to 42 U.S.C § 1983 ("Section 1983") and the Family Medical Leave Act ("FMLA"). The Court will evaluate the claims as alleged against the Municipal Defendants and the Individual Defendants in turn.

##### i.   Section 1983 Claims (Town and Select Board)

A city or other local government may be liable under Section 1983 "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." Connick v. Thompson, 563 U.S. 51, 60 (2011) (citing Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 692 (1978)). However, under Section 1983, local governments are responsible only for "their own illegal acts" and may not be held "vicariously liable" for their employees' actions. Id. (citations omitted). Therefore, plaintiffs who seek to impose liability against local governments must prove that the "'action pursuant to official municipal policy' caused their injury." Id. Importantly, plaintiffs seeking recovery under Section 1983 must allege a "'constitutional injury,' that is, he or she must identify a deprivation of some federally secured right." Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 55 (1st Cir. 2006) (citation omitted). Local governments are not vicariously liable under Section 1983 for their employees' actions. Monell, 436 U.S. at 690. However, they may be liable for constitutional violations under

Section 1983 if the government body causes plaintiff's injury by either a municipal policy or a municipal custom. Thomas v. Town of Chelmsford, 267 F. Supp. 3d 279, 305 (D. Mass. 2017).

A Section 1983 claim based on a theory of municipal policy is only viable where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell, 436 U.S. at 690-91. "[A] single decision by [a] person with final policy-making authority may result in municipal liability under certain circumstances . . . . However, this single action 'must be taken by a municipal official with final policy-making authority in the relevant area of the city's business.'" Freeman v. Town of Hudson, 849 F. Supp. 2d 138, 149 (D. Mass. 2012), aff'd, 714 F.3d 29 (1st Cir. 2013). The action constituting a municipal policy also "must be . . . the moving force behind the constitutional violation." Bordanaro v. McLeod, 871 F.2d 1151, 1162 (1st Cir. 1989). At the motion to dismiss stage, "a complaint must provide support for a reasonable inference that an official has the requisite authority." Freeman, 849 F. Supp. 2d at 150 (recommending dismissal of municipal claims where complaint references no state or local laws establishing the policymaking authority of any individual or group of individuals); accord Rinsky v. Tr. of Bos. Univ., No. 10cv10779-NG, 2010 WL 5437289, at *5 (D. Mass. Dec. 27, 2010) (dismissing municipal claim due to plaintiff's failure to provide the court with pertinent local or state laws, town charter, or procedural manuals to support inference that officials had final policy-making authority).

In order to establish a Section 1983 claim based on a theory of municipal custom, the plaintiff must allege actions that are "persistent and widespread discriminatory practices of state officials" which are "so permanent and well settled as to constitute a 'custom or usage' with the force of law," Monell, 436 U.S. at 690-91, such "that the policymaking officials of the municipality

can be said to have either actual or constructive knowledge of it yet did nothing to end the practice," Baez v. Town of Brookline, 44 F.4th 79, 82 (1st Cir. 2022). While a single incident "is insufficient, in and of itself, to establish a municipal custom or usage," "allegations of multiple instances of misconduct that suggest a systemic pattern of activity . . . may support an inference of a municipal custom." Summers v. City of Fitchburg, No. 23-cv-12849-ADB, 2024 WL 555815, at *8 (D. Mass. Feb. 12, 2024) (citation modified) (quoting Mahan v. Plymouth Cnty. House of Corrs., 64 F.3d 14, 16-17 (1st Cir. 1995); Doe v. Town of Wayland, 179 F. Supp. 3d 155, 173 (D. Mass. 2016)). As with a municipal policy, "the custom must have been the cause of and the moving force behind the deprivation of constitutional rights." Bordanaro, 871 F.3d at 1156.

As an initial matter, the claims against the Select Board must be dismissed. The Select Board is not a "person" under Section 1983 and consequently is not subject to suit. See Cronin v. Town of Amesbury, 895 F. Supp. 375, 383 (D. Mass. 1995). Claims directed at the conduct of the Select Board must be brought against the municipality, which in this case is the Town of Blackstone. See Willoughby v. Town of Tisbury, 750 F. Supp. 2d 374, 379 (D. Mass. 2010). Because dismissal of Plaintiffs' claims against the Select Board is appropriate, the Court will proceed to evaluate the claims against the Town.[1]

To the extent Plaintiffs attempt to implicate the Town, "[a]bsent evidence of an unconstitutional municipal policy [or custom], a single incident of misconduct cannot provide the basis for municipal liability under § 1983." Fabiano v. Hopkins, 352 F.3d 447, 452 (1st Cir. 2003) (citing City of Oklahoma v. Tuttle, 471 U.S. 808, 823-24 (1985)). Plaintiffs have failed to identify any specific municipal "policy or custom" that caused their alleged constitutional deprivation. Freeman v. Town of Hudson, 714 F.3d 29, 38 (1st Cir. 2013) (quoting Monell, 436 U.S. at 694).

---

[1] Plaintiffs do not oppose to the dismissal of the Select Board as to Count IX. [ECF No. 29 at 13].

8

The Complaint alleges that "Defendants disregarded Mrs. Strapponi's procedural due process concerning disciplinary action" and that "Blackstone's Town Bylaw § 145-53 requires a tiered-discipline system." [Compl. ¶¶ 538-39]. However, these allegations describe the Town's failure to following existing disciplinary procedures in Plaintiffs' individual case, rather than identifying any specific municipal policy, ordinance, regulation, or officially adopted decision that caused Plaintiffs' alleged constitutional violations. See Massachusetts ex rel. Powell v. Holmes, 546 F. Supp. 3d 58, 71 (D. Mass. 2021) (citing City of Oklahoma, 471 U.S. at 831) ("[C]ourts cannot infer the existence of such a policy or custom from an isolated instance of misconduct."). The Complaint also contains extensive factual allegations about the Individual Defendants' conduct toward Mrs. Strapponi, [Compl. ¶¶ 343-531], but fails to allege any specific municipal policy that was the moving force behind any constitutional deprivation. There are no allegations that the actions taken toward Mrs. Strapponi were similar to any other scenarios involving municipal employees that would suggest a systemic pattern or a custom. See Summers, 2024 WL 555815, at *8. Moreover, the Complaint does not reference any state or local laws, Town charter provisions, or procedural manuals establishing that any particular official had final policymaking authority in the relevant area. See Freeman v. Town of Hudson, 849 F. Supp. 2d 138, 150 (D. Mass. 2012), aff'd, 714 F.3d 29 (1st Cir. 2013); Burns v. City of Worcester, 772 F. Supp. 3d 109, 133 (D. Mass. 2025) (citing Rinsky v. Tr. of Bos. Univ., No. 10cv10779-NG, 2010 WL 5437289, at *5-6 (D. Mass. Dec. 27, 2010)). While Plaintiffs reference various Town Bylaws, [Compl. ¶¶ 539-43], these allegations demonstrate that the Town had policies in place, requiring proper procedures, and not that there was a policy or custom to violate constitutional rights. See Holmes, 546 F. Supp. 3d at 71. Without any evidence of a municipal policy or custom, Plaintiffs cannot maintain a cause of

action against the Town under Section 1983, as "[s]uch a result would be the equivalent of imposing *respondeat superior* liability upon the municipality." Bordanaro, 871 F.2d at 1161 n.8.

### ii. Section 1983 Claims (Individual Defendants)

Plaintiffs bring forth claims under 42 U.S.C. § 1983 ("Section 1983"), contending that the Individual Defendants violated Mrs. Strapponi's procedural due process rights. [SAC ¶¶ 569-608]. Section 1983 "is a vehicle through which individuals may sue certain persons for depriving them of federally assured rights," including the Fourteenth Amendment's right to due process. Gagliardi v. Sullivan, 513 F.3d 301, 306 (1st Cir. 2008). In order to succeed on a Section 1983 claim, a plaintiff must show that defendants acted under the color of state law, and that his or her conduct deprived plaintiff of rights secured by the Constitution or by federal law. Id. (citing Rodriguez-Cirilo v. Garcia, 115 F.3d 50, 52 (1st Cir. 1997)). Vicarious liability is inapplicable to Section 1983 claims. See Welch v. City of Biddeford Police Dep't, 12 F.4th 70, 75-76 (1st Cir. 2021) ("Officers are not liable under § 1983 for the actions of other officers"). As such, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

In order to establish a valid procedural due process claim, a plaintiff must show that he or she "was deprived of a property interest by defendants acting under color of state law and without the availability of a constitutionally adequate process." Maymi v. P.R. Ports Auth., 515 F.3d 20, 29 (1st Cir. 2008). The Fourteenth Amendment "affords due process protections to public employees who possess property interests in continued public employment." Galloza v. Foy, 389 F.3d 26, 33 (1st Cir. 2004) (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985)). The minimum amount of process due under the Constitution includes "some kind of hearing" and "some pretermination opportunity to respond." Wojcik v. Mass. State Lottery Com'n,

10

300 F.3d 92, 101-02 (1st Cir. 2002) (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985)).

We must first determine whether Mrs. Strapponi had "a reasonable expectation, arising out of a statute, policy, rule, or contract" in her continued employment. Senra v. Town of Smithfield, 715 F.3d 34, 38 (1st Cir. 2013) (quoting Wojcik, 300 F.3d at 101). "A constitutionally protected property interest in continued public employment typically arises when the employee has a reasonable expectation that her employment will continue." Gomez v. Rivera Rodriguez, 344 F.3d 103, 111 (1st Cir. 2003). "An at-will employee, however, has no reasonable expectation of continued employment." Dasey v. Anderson, 304 F.3d 148, 156-57 (1st Cir. 2002) (quoting King v. Town of Hanover, 116 F.3d 965, 969 (1st Cir. 1997)). Courts look to local law to determine the sufficiency of a claim of entitlement to a property interest in public employment. Rojas-Velazquez v. Figueroa-Sancha, 676 F.3d 206, 212 (1st Cir. 2012).

Plaintiffs contend that Mrs. Strapponi had a reasonable expectation of continued employment because Town Bylaw § 145-53 required "cause" for her termination. [ECF No. 25 at 17; Compl. ¶¶ 75, 485, 543, 560, 582, 599]. Town Bylaw § 145-53 reads as follows:

> A. Oral Reprimand. A department head or supervisor may issue an oral warning to the employee . . . .
> B. Written reprimand.
>    (1) A department head may issue a written reprimand . . . .
> C. Suspension.
>    (1) A department head or an appointing authority may suspend a nonexempt employee . . . .
> D. Discharge. After a hearing before the appointing authority, an employee may be terminated for cause . . . .

[ECF No. 11-1 at 71-73].[2] While at the motion to dismiss stage, a "plaintiff is not obligated . . . to fully plead the law providing them a property interest," Higgins v. Town of Concord, 246 F. Supp.

---

[2] The Court relies on Exhibit B of the Town's Motion to Dismiss, [ECF No. 11-1 at 70-74], which comprises a copy of the Town's Bylaws on Disciplinary and Grievance Procedures. The document is central to Plaintiffs' claims

11

3d 502, 513 (D. Mass. 2017), the Complaint fails to allege sufficient facts to support a plausible inference that Mrs. Strapponi had a protected property interest in her employment.

Town Bylaw § 145-53 indicates that an employee "may" be terminated for cause following a hearing. Plaintiffs would have us interpret this language to suggest that cause is required for termination, and that termination without cause is not permitted. However, the word "may" in this context refers to the appointing authority's discretion to pursue termination when cause exists, not whether cause is required in the first instance. See Kruger v. Cressy, 201 F.3d 427, 2000 WL 28971, at *2 (1st Cir. 2000) ("[A] mere requirement that reasons be stated [for discharging a public employee] does not mean that they must be sufficient to constitute legal cause . . . . Manifestly this confers no property interest."). Indeed, Town Bylaw § 145-50(B) reinforces this point, providing that "[t]he type of disciplinary action impose is <u>at the discretion of the appointing authority and department heads</u> and is dependent upon the nature of the disciplinary violation." [ECF No. 11-1 at 71 (emphasis added)]. "Where, as here, the law does not state that 'cause' is <u>required</u> for removal, the employee remains an at-will employee and, therefore, does not acquire a property interest in his continued employment." McCann v. City of Lawrence, 659 F. Supp. 2d 243, 249 (D. Mass. 2009) (emphasis added); accord Regan v. Comm'r of Ins., 178 N.E.2d 81, 83 (Mass. 1961) ("Where, as here, the power is given to appoint and remove 'additional deputies, examiners, assistant actuaries and inspectors <u>as the service may require</u>,' no notice or hearing is required, and the determination is <u>in the discretion</u> of the Commissioner." (emphasis added)).[3] Because Plaintiffs

---

arising from Mrs. Strapponi's termination, and is sufficiently referenced in the Complain. E.g., [Compl. ¶¶ 75, 485, 543, 560, 582, 599]. The Court can include external documents in its review—specifically documents of undisputed authenticity, official public records, documents central to the plaintiff's claim, and those sufficiently referenced in the complaint—without converting the motion into one for summary judgment. Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

[3] Plaintiffs contend that McCann is distinguishable because the plaintiff there was never terminated. [ECF No. 25 at 17-18]. While it is true that the plaintiff was only suspended, the plaintiff alleged a violation of his procedural due process rights. 659 F. Supp. 2d at 246. That session of this Court, like here, assessed whether the plaintiff possessed a protected property interest based on a removal provision of the town charter. Id. at 249. Among other things, the

have failed to plausibly allege a protected property interest in Mrs. Strapponi's continued employment, their procedural due process claim fail as a matter of law and must be dismissed.[4]

### iii. FMLA Claim (All Defendants)

Plaintiffs allege that Defendants violated her rights under the Family and Medical Leave Act ("FMLA") by denying her requests for medical leave. [Compl. ¶¶ 609-23]. "The FMLA provides eligible employees with, among other things, the right to take twelve weeks of leave during any twelve-month period because the employee has 'a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" Kliskey v. Making Opportunity Count, Inc., 775 F. Supp. 3d 496, 506 (D. Mass. 2025) (quoting Germanowski v. Harris, 854 F.3d 68, 72 (1st Cir. 2017)). "The FMLA and its accompanying regulations make it unlawful for any employer to, among other things . . . interfere with, restrain, or deny the exercise of any FMLA right." Id. (quoting Carrero-Ojeda v. Autoridad de Energía Eléctrica, 755 F.3d 711, 718 (1st Cir. 2014)) (citation modified).

To state an interference claim, a plaintiff must plausibly plead that "(1) [s]he was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave her employer notice of her intention to take leave; and (5) her employer denied her FMLA benefits to which she was entitled." Tardiff v. Laborers Int'l Union of N. Am. Loc. Union 609, No. 4:23-cv-40115-MRG, 2025 WL 2374000, at *12 (D. Mass. Aug. 15, 2025) (quoting McKeon v. Robert Reiser & Co., 770 F. Supp. 3d 351, 376 (D. Mass. 2025)).

---

provision in question stated that "[t]he mayor may remove any person . . . by filing a written statement with the city council, setting forth the reason or reasons therefore a copy of which shall be delivered to the person whose removal is sought who may make a written replay [sic], which if (s)he desires may be filed with the city council and be a public record." Id. While the provision required the filing of a statement of reasons behind a removal, the Court concluded that plaintiff remained an at-will employee without a protected property interest because the provision did not expressly require cause. Id. That analysis fits squarely into the Court's analysis here.

[4] This alone provides an independent basis for dismissing the municipal liability claims. Leavitt v. Corr. Med. Servs., Inc., 645 F.3d 484, 504 (1st Cir. 2011) ("Where, as here, there is no constitutional violation by the employees of the municipality, there can be no liability predicated on municipal policy or custom.").

13

Generally, a claim asserting a violation of the FMLA must be brought no later than two years "after the date of the last event constituting the alleged violation for which the action is brought." 29 U.S.C § 2617(c)(1). Where the alleged violation was willful, however, the statute of limitations is extended to a three-year period. Id. § 2617(c)(2).

Conduct is willful when "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." Favreau v. Liberty Mut., Inc., 451 F. Supp. 3d 150, 160 (D. Mass. 2020). Negligent conduct is insufficient to establish a willful violation. Id. (citing McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988)). Thus, to properly allege a willful FMLA violation, and thereby enlarge the statute of limitations, a plaintiff must demonstrate that the defendant employer "(1) had actual knowledge of and recklessly disregarded the requirements of the FMLA, and (2) intentionally disobeyed or ignored the law." Gregg v. Ne. Univ., 743 F. Supp. 3d 257, 274-75 (D. Mass. 2024) (quoting Favreau, 451 F. Supp. 3d at 160). "The touchstone of a willful violation appears to be evidence of discriminatory animus," including "derogatory comments and overt hostility" by the employer towards the plaintiff's medical condition and need for leave. Favreau, 451 F. Supp. 3d at 161.

Defendants take issue with the timeliness of Plaintiffs' claim, alleging that it is precluded by the FMLA's two-year statute of limitations because the Complaint does not assert a willful violation. [ECF No. 8 at 23-24; ECF No. 11 at 16-17; ECF No. 14 at 17]. As outlined above, the statute of limitations begins to accrue "after the date of the last event constituting the alleged violation for which the action is brought." 29 U.S.C § 2617(c)(1). It is not entirely clear from the Complaint whether the denial of leave occurred on November 15, 2022, when Mrs. Strapponi was first placed on administrative leave and the same day, she requested FMLA leave, or in December 2022, as Plaintiffs claim in their opposition brief to the Town's motion to dismiss. [Compl. ¶¶ 337-

14

39, 617-23; ECF No. 29 at 15]. In any event, this action—filed in October 2024—falls within the standard two-year limitations period.[5] For that reason, the Court need not assess whether the Complaint allege willfulness for purposes of the timeliness of Plaintiffs' FMLA claim.

Defendants additionally contend that Mrs. Strapponi was not entitled to FMLA leave because she was already on administrative leave at the time of her request. [ECF No. 8 at 24; ECF No. 11 at 17]. Again, while the timeline of events is unclear, the Complaint alleges that Mrs. Strapponi requested the postponement of any termination hearing until she returned from leave, suggesting that she submitted her request after learning of the termination proceedings against her. [Compl. ¶¶ 76, 617-18]. Defendants, however, cite no authority for their proposition, and the Court is aware of none.

Turning to the merits of the claim, however, Plaintiffs fare no better. As a threshold matter, Plaintiffs must establish that Mrs. Strapponi "fit the definition of an 'eligible employee,'" 29 U.S.C. § 2612(a)(1), and that Defendants "denied her benefits to which the FMLA entitled her." Wheeler v. Pioneer Developmental Servs., Inc., 349 F. Supp. 2d 158, 164 (D. Mass. 2004). The FMLA entitles an employee to twelve workweeks of leave during any twelve-month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). A "serious health condition" is defined as an illness that "involves either inpatient care or continuing treatment by a health care provider." 29 U.S.C. § 2611(11); 29 C.F.R. § 825.113. A patient receives "continuing treatment

---

[5] Defendants maintain, for instance, that Mrs. Strapponi requested FMLA leave in November 2022. It follows, they argue, that the FMLA claim falls outside the two-year statute of limitations. E.g., [ECF No. 8 at 23-24]. That contention is without merit. As an initial matter, the statute of limitations begins to accrue "after the date of the last event constituting the alleged violation for which the action is brought," not when plaintiff makes a request for leave under the FMLA. 29 U.S.C § 2617(c)(1). Further, Defendants' math does not add up. Even if arguendo Mrs. Strapponi request for leave was denied in November 2022, that would mean Plaintiffs had until November 2024 under the standard two-year statute of limitations, making this October 2024 action timely at least by a few weeks. By the same token, if her request for leave was denied in December 2022, that would mean that this action was timely by over a month.

by a health care provider" if the patient's illness involves a period of incapacity that lasts more than three consecutive calendar days <u>and</u> involves subsequent treatment "relating to the same condition." 29 C.F.R. § 825.115(a) (emphasis added). To prove incapacity, the employee must show an "inability to work . . . due to the serious health condition, treatment," or recovery therefrom. 29 C.F.R. § 825.113(b). An employee receives treatment if she receives treatment two or more times by a health care provider within 30 days of the first day of incapacity or receives a single treatment by a health care provider which results in a "regimen of continuing treatment under the supervision of the health care provider." 29 C.F.R. § 825.115(a); <u>Wheeler</u>, 349 F. Supp. 2d at 165-66.

The Complaint alleges that in Summer 2022, health care providers advised Mrs. Strapponi to take a leave of absence due to her health issues related to the alleged hostile work environment, defamation, and other mistreatment by Town officials and employees. [Compl. ¶ 613]. Specifically, the Complaint alleges that Mrs. Strapponi suffered from depression, anxiety, sleeplessness, and other severe, physical, emotional, and mental health issues, none of which existed prior to 2022. [Compl. ¶¶ 334-35, 468-69]. As a result, Mrs. Strapponi required mental health treatment and prescription medication. [Compl. ¶ 334-36, 470]. Mrs. Strapponi thus requested FMLA leave on November 15, 2022, by way of a letter addressed to Defendant Vecchio. [Compl. ¶¶ 337, 617]. Mrs. Strapponi "provided written documentation confirming that Mrs. Strapponi was suffering from a serious health condition and should not return to work or be required to make any decisions regarding her employment with the Town until further notice." [Compl. ¶ 619].

While concerning, these allegations fail to plausibly establish the existence of a "serious health condition" as defined under the FMLA. See <u>Mehic v. Dana-Farber Cancer Institute, Inc.</u>,

No. 15-12934-IT, 2018 WL 11513521, at *29-30 (D. Mass. Aug. 31, 2018). Indeed, the Complaint does not allege that Mrs. Strapponi was subject to inpatient care. 29 U.S.C. § 2611(11); 29 C.F.R. § 825.113. Nor does it contain allegations sufficient to demonstrate continuing treatment by a health care provider as required by the FMLA regulations. 29 C.F.R. §§ 825.113(b), 825.115(a). While the Complaint references mental health treatment and prescription medication, [Compl. ¶¶ 336, 470]; Mehic, 2018 WL 11513521, at *30 ("A regimen of continuing treatment . . . includes a course of prescription medication[.]"), it does not allege that Mrs. Strapponi experienced a period of incapacity lasting more than three consecutive calendar days. 29 C.F.R. § 825.115(a). This is fatal to the claim. The mere conclusory assertion that Mrs. Strapponi was suffering from a serious health condition, without supporting factual allegations demonstrating the specific elements required under the FMLA regulations, is insufficient to state a plausible claim for relief. Accordingly, Plaintiffs have failed to adequately allege that Mrs. Strapponi had a serious health condition entitling her to FMLA leave, and the FMLA claim must be dismissed.

### B. State Claims

Having determined that Counts X and XI fail, and "given that the [Plaintiffs'] basis for this Court's subject matter jurisdiction was the purported presence of a federal question[,]" the Court will not exercise supplemental jurisdiction over Counts I-IX, XII, and XIII, which are purely state law claims. Ryan v. UMass Mem'l Health, 728 F. Supp. 3d 215, 221 (D. Mass. 2024) (collecting cases).[6] "[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right[.]" United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) (citations omitted). As such, if claims arising under the Constitution or federal law are dismissed before trial, any remaining state claims should

---

[6] Plaintiffs concede that their hostile work environment claim (Count V) is not based on a protected class under Title VII of the Civil Rights Act of 1964, [ECF No. 29 at 7-8], and their filings do not otherwise raise a viable claim subject to federal question jurisdiction, see generally [Compl.]; see [ECF No. 8 at 12-13].

be dismissed too as a matter of comity and to promote justice between the parties. See id. At such an early stage in the litigation, the equities do not weigh in favor of the Court retaining jurisdiction. With pretrial discovery or trial preparation yet to occur, the parties have invested relatively little time or resources into the suit. See Rivera-Diaz v. Humana Ins. of P.R., Inc., 748 F.3d 387, 392 (1st Cir. 2014). The Court accordingly declines to exercise supplemental jurisdiction over the remaining state law claims and dismisses them without prejudice to Plaintiffs filing suit in state court. See Grispino v. New England Mut. Life Ins. Co., 358 F.3d 16, 19 (1st Cir. 2004).

## IV. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss, [ECF No. 7, 10, 13], are **GRANTED**.

**SO ORDERED**.

Dated: September 30, 2025

                                                 */s/ Margaret R. Guzman*
                                                 Margaret R. Guzman
                                                 United States District Judge